UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

────────────────────────────

KUILIMA CHILDS,

                    Plaintiff,
        -vs-                              **No. 1:14-CV-00462 (MAT)**
                                          **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

────────────────────────────

## I.   Introduction

        Represented by counsel, Kuilima Childs ("plaintiff") brings

this action pursuant to Title XVI of the Social Security Act ("the

Act"), seeking review of the final decision of the Commissioner of

Social Security ("the Commissioner") denying her application for

supplemental security income ("SSI").  The Court has jurisdiction

over this matter pursuant to 42 U.S.C. § 405(g).  Presently before

the Court are the parties' cross-motions for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  For the reasons discussed below, plaintiff's motion is

granted to the extent that this matter is remanded to the

Commissioner for further administrative proceedings consistent with

this Decision and Order.

## II.  Procedural History

        The record reveals that in June 2011, plaintiff (d/o/b

February 13, 1973) applied for SSI. After her application was

denied, plaintiff requested a hearing, which was held before

administrative law judge David S. Lewandowski ("the ALJ") on

October 24, 2012. The ALJ issued an unfavorable decision on December 26, 2012. The Appeals Council denied review of that decision and this timely action followed.

## III. Summary of the Evidence

The relevant medical records in this case focus on plaintiff's mental impairments. Plaintiff was diagnosed, at different times, with depressive disorder, bipolar disorder, and schizoaffective disorder. Prior to August 2011, plaintiff apparently received mental health treatment from her primary care physician, who noted a diagnosis of depressive disorder.

Dr. Susan Santarpia, a pyschologist, completed a psychiatric evaluation at the request of the state agency in July 2011. At that time, plaintiff's "psychotropic medication [was] currently being managed through her primary care physician." T. 325. On mental status examination, plaintiff demonstrated dysphoric affect and mood, and judgment and insight were poor. Dr. Santarpia opined that plaintiff "appear[ed] able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks within normal limits." T. 327. According to Dr. Santarpia, plaintiff would be mildly limited in "performing complex tasks independently, relating adequately with others, and appropriately dealing with stress," and she would have mild to moderate difficulty in making appropriate decisions. Id.

About a month later, in August 2011, plaintiff was hospitalized for approximately one week after cutting her wrist. Upon admission to Buffalo General Hospital, plaintiff's "degree of symptoms [were] severe." T. 379. Plaintiff reported hearing voices which told her to kill herself or her husband, with whom she reported a long history of abusive patterns. According to plaintiff's reports, she and her husband had both been repeatedly charged with assault and had appeared in court in alternating roles of victim and defendant. Plaintiff was diagnosed with manic depression, and participated in group and individual therapy during her admission, which treatment was noted to be beneficial. During her hospital stay, plaintiff admitted to self-medicating with alcohol, and a history of alcohol and cocaine dependence were noted. Discharge medications included Lexapro, an antidepressant.

After that hospitalization, plaintiff began treating regularly at Mid-Erie Counseling and Treatment Services ("Mid-Erie"). Upon initial assessment, plaintiff was diagnosed with schizoaffective disorder, alcohol dependence, cocaine dependence, nicotine dependence, and borderline personality disorder. She treated with counselors for psychotherapy and with psychiatrist Dr. Nady Shehata for medication management. Dr. Shehata maintained plaintiff's prescription for Lexapro, and additionally prescribed Risperdal, an antipsychotic. The treatment records reflect that plaintiff continued to report auditory hallucinations through October 2011,

over time reporting that the hallucinations began to "fad[e] into the background and she [stopped] paying attention to them." T. 632. After October 2011, plaintiff did not again report auditory hallucinations.

Over the next year, plaintiff's chief complaints related to substance abuse issues, financial problems, and family dysfunction. Plaintiff was noted to have six children, all of whom were in foster care. During the fall of 2012, plaintiff volunteered in a kitchen and noted that she liked this because it "[gave] her something to do." T. 621. She reported "want[ing] to look for work as she [was] bored with just sitting around." T. 622. However, a mental residual functional capacity assessment, submitted by plaintiff's counselor at Mid-Erie and dated November 14, 2012, opined that plaintiff was "unable to maintain mood stability for prolonged periods of time and [had] frequent mood [s]wings that interfere[d] with performing activities of daily living, holding a steady job or maintaining a steady schedule." T. 666. According to her counselor, plaintiff had "been in treatment for a long period of time and [had] made minimal progress though she continue[d] to work toward all her goals." Id.

IV. **The ALJ's Decision**

At step one of the five-step sequential evaluation, see 20 C.F.R. § 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 2, 2011, the application

4

date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: asthma, arthritis, and major depressive disorder with psychotic features. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b), in that she could frequently perform postural activities; could frequently twist and turn the lumbar spine; could understand, remember, and carry out simple instructions, perform simple tasks, occasionally interact with others, and occasionally tolerate changes in a work setting; could comply with a regular, simple schedule, but should not have to utilize public transportation as a job duty; and should avoid pulmonary irritants. At step four, the ALJ found that plaintiff had no past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

## V.   Discussion

A   district   court   may   set   aside   the   Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that the ALJ erred in failing to find that she suffered from shizoaffective disorder, as a severe mental impairment, at step two of the sequential evaluation. At step two, the ALJ found that plaintiff suffered from depressive disorder with psychotic features. As discussed more fully below, the ALJ actually found that plaintiff did *not* suffer from schizoaffective disorder, a finding that was factually incorrect.

The   Commissioner   cites   the   well-established   rule   that generally, "an error in an ALJ's severity assessment with regard to a given impairment is harmless . . . *when it is clear that the ALJ considered the  claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process*." Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (emphasis added) (internal quotation marks and citations omitted). Here, however, the ALJ's decision indicates

that he failed to consider her schizoaffective disorder at steps two, and three, of the sequential evaluation process.

In fact, the ALJ made an explicit credibility determination against plaintiff based partially on his inaccurate reading of the record: "Contrary to [plaintiff's] testimony, she has never been diagnosed with schizophrenia, but rather with depression and rule out diagnoses of bipolar disorder and post-traumatic stress disorder." T. 19. While the Court recognizes that schizophrenia and schizoaffective disorder are two closely related yet distinct diagnoses, the ALJ's statement and the surrounding context strongly suggest that his review of the record was not complete and consequently he failed to properly consider plaintiff's schizoaffective disorder diagnosis. Additionally, the ALJ noted that plaintiff's medications, per her report at Dr. Santarpia's consulting examination, as including Lexapro. However, the ALJ never went on to recognize that, subsequent to Dr. Santarpia's examination, plaintiff was eventually diagnosed with schizoaffective disorder and prescribed more serious antipsychotic medication on a continuous basis.

Plaintiff's diagnosis of schizoaffective disorder – her most recent psychiatric diagnosis – is clearly stated in the record. T. 613. This diagnosis was made at the outset of her regular treatment at Mid-Erie, which is well-documented and went on to span more than a year. Moreover, the record indicates that, as a result

7

of this diagnosis, Dr. Shehata modified plaintiff's prescriptions to include Risperdal, an antipsychotic medication generally used for the treatment of psychotic features associated with schizophrenia and bipolar disorder. Additionally, plaintiff continued to be prescribed Lexapro, an antidepressant.

A reading of the ALJ's decision leaves no other conclusion than that he failed to thoroughly review plaintiff's complete medical record, as he was required to do under the regulations.

In this case, the ALJ did not determine that plaintiff's schizoaffective disorder was *non-severe*; rather, he concluded that she did not suffer from the disorder at all. Consequently, at a minimum, the ALJ failed in his duty to consider the "combined impact of [plaintiff's medically-determinable] impairments . . . throughout the disability determination process." 20 C.F.R. 416.923; see Bigwarfe v. Comm'r Of Soc. Sec., 2008 WL 4518737, *6 (N.D.N.Y. Sept. 30, 2008) ("Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.").

The ALJ's failure to consider plaintiff's schizoaffective disorder at both steps two and three of the sequential evaluation process constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application. See, e.g., Elliott v. Comm'r of Soc. Sec., 2011 WL

8

1299623, *4 (D. Or. Mar. 31, 2011) ("The general proposition that failures at step two may be harmless *if the ALJ discusses the impairments and assesses limitations as a result of that impairment*, . . . underscores the significance of the error in this case – the ALJ failed to adequately discuss the impairments at issue, and a determination as to whether plaintiff's limitations were fully assessed in connection with these impairments is impossible to ascertain.") (emphasis added); Hamilton v. Astrue, 2012 WL 7682462, *6 (N.D.N.Y. Mar. 29, 2012) (holding the ALJ's step-two error not harmless where there was "no indication in the decision that the ALJ considered the impact of [plaintiff's impairment] on his ability to perform work-related functions")).

Additionally, the ALJ's step two error prejudiced plaintiff at step three, where he considered only Listing 12.04 (affective disorders), yet failed to consider Listing 12.03 (schizophrenic, paranoid and other psychotic disorders). See Chandler v. Soc. Sec. Admin., 2013 WL 2482612, *10 (D. Vt. June 10, 2013) ("[W]here the omitted impairment was not accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error *prejudiced the claimant at later steps in the sequential evaluation process*, remand is required[.]") (emphasis added).

The ALJ's attribution of no significant weight to the mental RFC submitted by plaintiff's counselor at Mid-Erie further supports the Court's conclusion that the ALJ did not fully consider the

impact of this opinion in determining plaintiff's psychiatric disorder. The ALJ discounted the Mid-Erie assessment, in part, because it "lack[ed] any documentation as to who completed the form." T. 20. However, the record clearly indicates that, although the report itself was not signed, it was submitted via fax by JoAnn Krieger, plaintiff's counselor at Mid-Erie. See T. 663; 620-22, 638-46 (documenting JoAnn Krieger as plaintiff's regular counselor from February through October 2012).

Ms. Krieger's report indicated, in a detailed comment page, that plaintiff suffered from serious psychiatric symptoms which could have an obvious affect upon her ability to sustain full-time work. Had the ALJ properly considered plaintiff's schizophrenia diagnosis and serious psychiatric symptoms associated therewith, he may not have discounted the only functional assessment in the record from a treating provider. This error is especially significant considering that the ALJ gave the "greatest weight" to Dr. Santarpia's opinion, which was issued before plaintiff's August 2011 hospitalization and subsequent regular treatment at Mid-Erie. T. 20-21.

In light of the foregoing, this case is reversed and remanded for further proceedings. On remand, the ALJ must consider plaintiff's diagnosis of schizoaffective disorder, as well as her other psychiatric diagnoses, at steps two and three of the sequential evaluation. The ALJ is directed to reconsider the

opinion from Ms. Krieger, plaintiff's counselor at Mid-Erie, in determining the functional limitations stemming from plaintiff's psychiatric diagnoses.

Having found remand necessary, the Court declines to address plaintiff's argument regarding credibility. Plaintiff's credibility must be reconsidered on remand upon thorough consideration of the administrative record.

**VI. Conclusion**

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Doc. 13) is denied and plaintiff's motion (Doc. 10) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:      March 23, 2016
            Rochester, New York.